**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------
RYAN O'DELL,                                    :
                                                :
          Plaintiff,                            :     Civil Action No. 22-cv-5113
                                                :
v.                                              :     COMPLAINT FOR VIOLATIONS OF
                                                :     SECTIONS 14(a) AND 20(a) OF THE
SILICON MOTION TECHNOLOGY                       :     SECURITIES EXCHANGE ACT OF
CORPORATION, JAMES CHOW,                        :     1934
WALLACE C. KOU, STEVE CHEN,                     :
TSUNG-MING CHUNG, LIEN-CHUN LIU,                :     JURY TRIAL DEMANDED
YUNG-CHIEN WANG, HAN-PING D.                    :
SHIEH, KENNETH KUAN-MING LIN, and               :
NELSON DUANN,                                   :
                                                :
          Defendants.                           :
-------------------------------------------------------  :
```

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1. This is an action brought by Plaintiff against Silicon Motion Technology

Corporation ("Silicon Motion or the "Company") the members Silicon Motion's board of directors

(the "Board" or the "Individual Defendants"), and MaxLinear, Inc., a Delaware corporation, and

affiliates ("MaxLinear" and collectively with the Company, the "Defendants") for their violations

of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15

U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in

connection with the proposed merger between Silicon Motion and MaxLinear.

2. Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on June 15, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Shark Merger Sub, an exempted company incorporated and existing under the laws of the Cayman Islands and a wholly owned subsidiary of MaxLinear ("Merger Sub"), will merge with and into Silicon Motion with Silicon Motion surviving as a wholly owned subsidiary of MaxLinear (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Silicon Motion stockholder will receive: (i) $23.385 in cash and (ii) 0.097 shares of MaxLinear common stock (the "Merger Consideration"). Following the consummation of the Proposed Transaction, Company shareholders will own 14.1% of the combined company and MaxLinear shareholders will own 85.9% of the combined company.

3.      As discussed below, Defendants have asked Silicon Motion's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Goldman Sachs (Asia) L.L.C. ("Goldman Sachs") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Silicon Motion's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because plaintiff resides in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Silicon Motion stocks and has held such stocks since prior to the wrongs complained of herein.

10.      Individual Defendant James Chow has served as a member of the Board since April 2005 and is the Company's Chairman of the Board.

11.      Individual Defendant Wallace C. Kou has served as a member of the Board since founding the Company in 1995, and is the Company's President and Chief Executive Officer.

12.      Individual Defendant Steve Chen has served as a member of the Board since 2015.

13.     Individual Defendant Tsung-Ming Chung has served as a member of the Board since June 2004.

14.     Individual Defendant Lien-Chun Liu has served as a member of the Board since June 2004.

15.     Individual Defendant Yung-Chien Wang has served as a member of the Board since June 2005.

16.     Individual Defendant Han-Ping D. Shieh has served as a member of the Board since 2014.

17.     Individual Defendant Kenneth Kuan-Ming Lin has served as a member of the Board since September 2018.

18.     Individual Defendant Nelson Duann has served as a member of the Board since August 2007 and is the Company's Senior VP of Marketing and R&D.

19.     Defendant Silicon Motion is a Cayman Islands corporation and maintains its principal offices at Flat C, 19/F, Wing Cheong Commercial Building, Nos 19-25 Jervois Street, Hong Kong.  The Company's ADSs trades on the NASDAQ Stock Exchange under the symbol "SIMO."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

### SUBSTANTIVE ALLEGATIONS

A.     <u>**The Proposed Transaction**</u>

22.     Silicon Motion, together with its subsidiaries, designs, develops, and markets NAND flash controllers for solid-state storage devices. It offers controllers for computing-grade

solid state drives (SSDs), which are used in PCs and other client devices; enterprise-grade SSDs used in data centers; eMMC and UFS mobile embedded storage for use in smartphones and IoT devices; flash memory cards and flash drives for use in expandable storage; and specialized SSDs that are used in industrial, commercial, and automotive applications. It markets its controllers under the SMI brand; enterprise-grade SSDs under the Shannon Systems brand; and single-chip industrial-grade SSDs under the Ferri SSD, Ferri-eMMC, and Ferri-UFS brands. The company markets and sells its products through direct sales personnel and independent electronics distributors to NAND flash makers, module makers, hyperscalers, and OEMs. It operates in Taiwan, the United States, South Korea, China, Malaysia, Singapore, and internationally. Silicon Motion was founded in 1995 and is based in Hong Kong, Hong Kong.

23.     On May 5, 2022, the Company and MaxLinear jointly announced the Proposed Transaction:

> CARLSBAD, Calif. & TAIPEI, Taiwan--(BUSINESS WIRE)--
> MaxLinear, Inc. (NASDAQ: MXL) a leading provider of radio
> frequency (RF), analog and mixed-signal integrated circuits for
> broadband, connectivity, and infrastructure markets, and Silicon
> Motion (NASDAQGS: SIMO), a global leader in NAND flash
> controllers for solid state storage devices, announced today that they
> have entered into a definitive agreement under which MaxLinear
> will acquire Silicon Motion in a cash and stock transaction that
> values the combined company at $8 billion in enterprise value. In
> the merger, each American Depositary Share (ADS) of Silicon
> Motion, which represents four ordinary shares of Silicon Motion,
> will receive $93.54 in cash and 0.388 shares of MaxLinear common
> stock, for total per ADS consideration of $114.34 (based on
> MaxLinear's May 4, 2022 closing price). The strategic business
> combination is anticipated to drive transformational scale, create a
> diversified technology portfolio, significantly expand the combined
> company's total addressable market, and create a highly profitable
> cash generating semiconductor leader.
>
> Upon completion of the acquisition, the combined company will
> have a highly diversified technology platform with strong positions
> across the broadband, connectivity, infrastructure, and storage end

markets. The combination of MaxLinear's RF, analog/mixed-signal, and processing capabilities with Silicon Motion's market leading NAND flash controller technology completes a total technology stack which fully captures end-to-end platform functionality and accelerates the company's expansion into enterprise, consumer, and many other adjacent growth markets. Combined revenues are expected to be more than $2 billion annually and are supported by the technology breadth to address a total market opportunity of roughly $15 billion.

The combined scale is expected to provide additional technology, resources, and capabilities to accelerate product innovation, improve operational efficiency and drive lower manufacturing costs. Together, MaxLinear and Silicon Motion will have expanded resources to better support the combined company's broad customer relationships with their long-term storage requirements. The transaction is expected to generate annual run-rate synergies of at least $100 million to be realized within 18 months after the transaction closes and is expected to be immediately and materially accretive to MaxLinear's non-GAAP earnings per share and cash flow.

"Today's announcement celebrates the combination of two companies that have driven significant innovation in their respective industries for over a decade," said Kishore Seendripu, Ph.D., Chairman and CEO of MaxLinear. "The enhanced scale of the combined organization creates a new significant $2B+ player in the semiconductor industry with compelling positions across a diversified set of end-markets. MaxLinear has demonstrated a strong track record of integration success and looks for this combination to create robust growth, impressive operating margins and significant cash flows."

"For 20 years, we have built Silicon Motion with a commitment to advancing innovation, partnering with all of our valued customers and supporting our colleagues around the world," said Wallace Kou, President and Chief Executive Officer of Silicon Motion. "Combining Silicon Motion with MaxLinear creates significant economies of scale, accelerates our expansion into enterprise storage markets and unites unparalleled intellectual property to continue serving our customers with high-quality expertise and technical support. This transaction will deliver compelling value for shareholders, position our company to achieve our growth objectives and advance our position in high-growth storage end markets. We are very excited to partner with the MaxLinear team to take the combined company to the next level."

### Transaction Structure and Terms

Under the terms of the definitive agreement, the transaction consideration will consist of $93.54 in cash and 0.388 shares of MaxLinear stock for each Silicon Motion ADS (American Depositary Share) and $23.385 in cash and 0.097 shares of MaxLinear common stock for each Silicon Motion ordinary share not represented by an ADS. Upon closing of the transaction, MaxLinear shareholders will own approximately 86% of the combined company and Silicon Motion stockholders will own approximately 14% of the combined company. Based on the closing price of MaxLinear shares on May 4, 2022, the implied value of the total transaction consideration for Silicon Motion is $3.8 billion.

MaxLinear intends to fund the $3.1 billion of cash consideration with cash on hand from the combined companies and fully committed debt financing from Wells Fargo Bank, N.A. The transaction is not subject to any financing conditions and is expected to close by the first half of calendar 2023, pending satisfaction of customary closing conditions, including Silicon Motion shareholders' approval and regulatory approvals in various jurisdictions. Additional information to be discussed in the investor call referenced below is available on our website at https://investors.maxlinear.com.

### Advisors and Financing Sources

BMO Capital Markets Corp. is acting as exclusive financial advisor to MaxLinear, and Wilson Sonsini Goodrich & Rosati, P.C. is acting as legal advisor. Wells Fargo Bank, N.A. is providing committed debt financing for the transaction. Goldman Sachs (Asia) L.L.C. is acting as exclusive financial advisor to Silicon Motion and Latham & Watkins LLP and K&L Gates are acting as legal advisors.

* * *

24.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Silicon Motion's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     <u>**The Materially Incomplete and Misleading Registration Statement**</u>

25.     On June 16, 2022, Silicon Motion and MaxLinear jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*<u>Omissions and/or Material Misrepresentations Concerning Financial Projections</u>*

26.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by Goldman Sachs in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management of MaxLinear and Silicon Motion prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and Goldman Sachs with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and Goldman Sachs. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope

to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     For the Company Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2022 through 2026: Non-GAAP Operating Income, Non-GAAP Net I ncome, Non-GAAP EBITDA, and Unlevered Free Cash Flows, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.     The Registration Statement completely omits the projections for MaxLinear, information that is material to Company shareholders since they will own stock in MaxLinear upon closing of the Proposed Transaction.

29.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its

usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

31.     Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for Silicon Motion*

32.     With respect to Goldman Sachs' *Illustrative Discounted Free Cash Flow Analysis*, the Registration Statement fails to disclose: (i) a range of illustrative terminal values for the Company; (ii) line items used to calculate Silicon Motion's projected unlevered free cash flows; (iii) the inputs and assumptions underlying the use of the perpetuity growth rates of 1.0% to 2.0%; (iv) the inputs and assumptions underlying the discount rates ranging from 9.5% to 11.5%; (v) the Company's weighted average cost of capital; (vi) the net cash held by the Company as of March 31, 2022; and (vii) the amount of fully diluted number of shares of Company common stock.

33.     With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions for applying a range of next twelve month price-to-earnings multiples of 10.0x to 13.0x to the next twelve month non-GAAP estimated earnings per ADS as of December 31, 2022, 2023, and 2024; (ii) the inputs and assumptions underlying the illustrative discount rate of 10.5%.

34.     With respect to Goldman Sachs' *Premia Analysis*, the Registration Statement fails to disclose the cash transactions reviewed and the premia paid in those transactions.

35.     With respect to Goldman Sachs' *Selected Transactions Analysis*, the Registration Statement fails to disclose the financial metrics for the selected transactions.

36.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

39.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things,

the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

42.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     The Individual Defendants acted as controlling persons of Silicon Motion within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Silicon Motion, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Silicon Motion, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Silicon Motion, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed

Transaction.   The Individual Defendants were thus directly involved in the making of the Registration Statement.

47.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.   The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50.     Plaintiff has no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 17, 2022                           **MELWANI & CHAN LLP**

                                    By:   */s/ Gloria Kui Melwani*
                                          Gloria Kui Melwani
                                          1180 Avenue of the Americas, 8th Fl.
                                          New York, NY 10036
                                          Telephone: (212) 382-4620
                                          Email: gloria@melwanichan.com

                                          *Attorneys for Plaintiff*